**WO**                                           NOT FOR PUBLICATION

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Brittany Everts,<br><br>                Plaintiff,<br><br>v.<br><br>Sushi Brokers LLC,<br><br>                Defendant. | No. CV-15-02066-PHX-JJT<br><br>**ORDER** |

At issue is Plaintiff's Amended Motion for Summary Judgment (Doc. 70, Mot. Summ. J.), to which Defendant filed a Response (Doc. 73, Resp.), and Plaintiff filed a Reply (Doc. 75, Reply). Because the parties' briefs were adequate for the Court to resolve the issues arising in Plaintiff's Motion, the Court finds this matter appropriate for decision without oral argument. *See* LRCiv 7.2(f). For the reasons set forth below, the Court grants Plaintiff's Motion for Summary Judgment on the issue of Defendant's liability.

**I.     BACKGROUND**

On October 15, 2015, Plaintiff Brittany Everts filed a Complaint, the operative pleading, against Defendant Sushi Brokers, LLC. (Doc. 1, Compl. at 1.) Plaintiff alleges two claims: (Count 1) pregnancy discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e; and (Count 2) gender discrimination in violation of the Arizona Civil Rights Act ("ACRA"), A.R.S. § 41-1463(B). (Compl. ¶¶ 37-53.)

Beginning in early 2011, Plaintiff worked as a sushi server at Defendant's restaurant. (Doc. 71, PSOF ¶¶ 1–2.) Later that year, she became pregnant, and her pregnancy began to show. (PSOF ¶¶ 1–2.) On September 18, 2011, Randon L. Miller, Defendant's managing member and thus owner of the restaurant, left a voicemail for Plaintiff's shift manager, Ms. Morton, stating the following:

> [W]e got Baby Momma. We got—oh, I can't leave these messages because obviously we'd get in trouble—but it's just ridiculous. It's all the same stuff. We can't have a big fat pregnant woman working in my restaurant. I'm sorry it doesn't fly. I will not hire them when they walk in. I will not eat them with eggs. I will not eat them with ham. No green eggs; no ham; no nothing . . . I don't know how I have—who I have to deal with to get people off my schedule. So please call me tomorrow and we'll work it out.

(PSOF ¶ 9.)[1]

On September 20, 2011, Ms. Morton fired Plaintiff without citing her pregnancy as the reason for the termination. (PSOF ¶ 10.) Plaintiff avers that Defendant terminated her after she refused to accept a reassignment to the hostess position because of her pregnancy. (PSOF ¶ 21.) Defendant concedes that one of the reasons it fired Plaintiff was because she refused to accept reassignment to the hostess position as a reasonable accommodation designed to protect her health and safety during her pregnancy. (Doc. 74, DSOF ¶¶ 21, 23–26.) On September 27, 2011, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). (PSOF ¶ 37.) On August 24, 2015, Plaintiff received a Notice of Right to Sue from the EEOC, thus allowing the present action. (PSOF ¶ 37.)

## II. LEGAL STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate when: (1) the movant shows that there is no genuine dispute as to any

---

[1] The Court also permitted Plaintiff to non-electronically file an audio recording of the voicemail. (Doc. 79.)

- 2 -

material fact; and (2) after viewing the evidence most favorably to the non-moving party, the movant is entitled to prevail as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Eisenberg v. Ins. Co. of N. Am.*, 815 F.2d 1285, 1288–89 (9th Cir. 1987). Under this standard, "[o]nly disputes over facts that might affect the outcome of the suit under governing [substantive] law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine issue" of material fact arises only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.*

In considering a motion for summary judgment, the court must regard as true the non-moving party's evidence if it is supported by affidavits or other evidentiary material. *Celotex*, 477 U.S. at 324; *Eisenberg*, 815 F.2d at 1289. The non-moving party may not merely rest on its pleadings; it must produce some significant probative evidence tending to contradict the moving party's allegations, thereby creating a question of material fact. *Anderson*, 477 U.S. at 256–57 (holding that a plaintiff must present affirmative evidence in order to defeat the defendant's properly supported motion for summary judgment); *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968).

"A summary judgment motion cannot be defeated by relying solely on conclusory allegations unsupported by factual data." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). "Summary judgment must be entered 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *United States v. Carter*, 906 F.2d 1375, 1376 (9th Cir. 1990) (quoting *Celotex*, 477 U.S. at 322).

## III. ANALYSIS

### A. Title VII Discrimination

Plaintiff first moves for summary judgment on Defendant's liability for her Title VII pregnancy discrimination claim. (Mot. Summ. J. at 6–17.)

### 1. Legal Standard

Under Title VII, an employer cannot discharge or discriminate against an individual based on sex. 42 U.S.C. § 2000e-2(a)(1). As amended by the Pregnancy Discrimination Act ["PDA"], sex discrimination under Title VII includes discrimination on the basis of pregnancy. 42 U.S.C. § 2000e(k).

Liability in a disparate treatment case, such as this one, "depends on whether the protected trait actually motivated the employer's decision." *Raytheon Co. v. Hernandez*, 540 U.S. 44, 52 (2003) (ellipsis and internal quotation marks omitted). A plaintiff can prove disparate treatment "either (1) by direct evidence that a workplace policy, practice, or decision relies expressly on a protected characteristic, or (2) by using the burden-shifting framework set forth in *McDonnell Douglas*." *Young v. United Parcel Service, Inc.*, 135 S. Ct. 1338, 1345 (2015) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)).

To prove disparate treatment under Title VII using direct evidence,[2] a plaintiff must show that the employer had a facially discriminatory policy—one which on its face applies less favorably to a protected group. *Frank v. United Airlines, Inc.*, 216 F.3d 845, 854 (9th Cir. 2000). When an employer openly and explicitly uses gender as a basis for disparate treatment, the employer in effect admits systematic discrimination and the case turns on whether such disparate treatment is justified under Title VII. *Id.* Rather than applying the *McDonnell Douglas* test, once a policy is shown to be facially discriminatory, the court simply asks whether sex was a "bona fide occupational qualification" ("BFOQ") as outlined in 42 U.S.C. § 2000e-2(e). *Cmty. House, Inc. v. City of Boise*, 490 F.3d 1041, 1049 (9th Cir. 2006). The BFOQ defense is read narrowly and can be established only by "objective, verifiable requirement[s] . . . [that] concern job-related skills and aptitudes." *Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am., UAW v. Johnson Controls, Inc.*, 499 U.S. 187, 201 (1991). To prove that

---

[2] Because the Court resolves Plaintiff's Motion under the direct evidence test, it need not set forth the legal standard for disparate treatment using indirect evidence.

- 4 -

sex[3] is a BFOQ, an employer must prove by a preponderance of the evidence that "1) the job qualification justifying the discrimination is reasonably necessary to the essence of its business; and 2) that [sex] is a legitimate proxy for the qualification because (a) it has a 'substantial basis for believing that all or nearly all [pregnant women] lack the qualification,' or . . . (b) it is impossible or 'highly impractical . . . to insure by individual testing that its employees will have the necessary qualifications for the job." *EEOC v. Boeing Co.*, 843 F.2d 1213, 1214 (9th Cir. 1988) (citation omitted).

### 2. Analysis

In discrimination cases, "[d]irect evidence is evidence which, if believed, proves the fact [of discriminatory animus] without inference or presumption." *Rashdan v. Geissberger*, 764 F.3d 1179, 1183 (9th Cir. 2014) (citation omitted). In other words, direct evidence is "evidence of conduct or statements by persons involved in the decision-making process that may be viewed as directly reflecting the alleged discriminatory attitude . . . sufficient to permit the fact finder to infer that that attitude was more likely than not a motivating factor in the employer's decision." *Shelley v. Geren*, 666 F.3d 599, 615–16 (9th Cir. 2012) (citation omitted). Specifically, direct evidence requires an admission by the decision-maker that his or her actions were based on the prohibited animus. *Day v. LSI Corp.*, 174 F. Supp. 3d 1130, 1162 (D. Ariz. 2016). Absent such remarks, a plaintiff must show a nexus between a decision-maker's actions and a superior's discriminatory remarks. *Vasquez v. County of Los Angeles*, 349 F.3d 634, 640 (9th Cir. 2003). Alternatively, a facially discriminatory policy can be direct evidence of systematic sex discrimination. *Frank*, 216 F.3d at 854.

Plaintiff claims that a voice mail that Randon L. Miller, the restaurant's owner, left for Plaintiff's shift manager, Ms. Morton, is direct evidence of discriminatory animus. (Mot. Summ. J. at 8.) Defendant disputes that the voicemail is about Plaintiff because Mr. Miller never referred to Plaintiff by name and the voicemail never instructed

---

[3] Defendant argues that non-pregnancy is a BFOQ instead of explicitly arguing that sex is a BFOQ in this case. (Resp. at 8.) However, discrimination on the basis of pregnancy is a type of sex discrimination. 42 U.S.C. § 2000e(k).

- 5 -

1   Ms. Morton to fire anyone. (Resp. at 10.) Defendant, as supported by Mr. Miller's
2   affidavit, claims that Mr. Miller is not involved in the daily operations of the restaurant,
3   including the termination of employees. (Resp. at 10.) Mr. Miller's affidavit creates a
4   genuine issue of material fact regarding whether he is the decision-maker at the
5   restaurant. Therefore, Mr. Miller's voicemail is not direct evidence because it requires the
6   Court to infer that Mr. Miller's discriminatory remarks have a nexus with Ms. Morton's
7   termination of Plaintiff. A reasonable jury could find that no such nexus exists, and thus
8   summary judgment supported solely by the voicemail is inappropriate. Nevertheless,
9   Plaintiff has presented unrefuted, direct evidence that Defendant has a facially
10  discriminatory policy.

11  Plaintiff proffers evidence that Defendant has a policy of reassigning pregnant
12  servers to the lower paying hostess position—a policy that is discriminatory on its face.
13  (Mot. Summ. J. at 7.) The parties do not dispute that the hostess position is materially
14  different than the server position. But Defendant argues that it has an unwritten policy of
15  reassigning *all* employees who may be injured by working behind the bar to the hostess
16  position. (DSOF ¶ 5.) Specifically, Defendant claims that employees who are too large,
17  including pregnant servers and non-pregnant overweight workers, are not allowed to
18  work behind the bar. (DSOF ¶¶ 13–15, 18–19, 29.) However, Defendant failed to provide
19  significant probative evidence to create a question of material fact on this issue because
20  none of the evidence cited shows that Defendant reassigned any other employee except
21  Plaintiff to other positions because of his or her size. Instead, Defendant's cited evidence
22  shows that in the past, the restaurant switched chefs around to strategically place bigger
23  employees in the middle behind the bar to maximize space instead of moving them to
24  other positions. (Doc. 74-2, Ex. B, Dep. of Chris Kruidenier ("Kruidenier–Def.
25  Excerpts") at 57.)

26  On the other hand, the record contains overwhelming evidence that Defendant has
27  a standard, unwritten policy at the restaurant of reassigning pregnant servers to the
28  hostess position. For example, speaking about the restaurant in his videotaped deposition,

1  Mr. Miller admitted that "[w]e don't believe because [servers] are pregnant that they
2  should be fired. They all go to the hostess stand." (Doc. 70-6, Dep. of Randon Lee Miller
3  ("Miller–Pl. Excerpts") at 2.) Mr. Miller admitted that reassignment has been a standard
4  practice at the restaurant for fifteen years and that another pregnant employee had been
5  reassigned to a hostess position just days before the videotaped deposition. (Miller–Pl.
6  Excerpts at 2–4.)

There is also overwhelming evidence that Defendant tried to reassign Plaintiff to a hostess position out of fear for her safety and the safety of her fetus. First, Defendant provides evidence in which it explicitly and repeatedly admits that it fired Plaintiff for refusing to accept the reassignment to a hostess position as a reasonable accommodation to protect the health and safety of Plaintiff and her fetus. (DSOF ¶¶ 21, 23–25, 35.) Second, Mr. Miller's videotaped deposition includes multiple admissions that Defendant tried to reassign Plaintiff to a hostess position out of concern for the safety of her fetus. For example, in talking about Plaintiff, Mr. Miller said: "I wasn't worried about her. I was worried about her kid getting hurt. I didn't care about my bartenders getting punched in the gut, I was just worried about a child and not that [Plaintiff] was going to get hurt or not." (Doc. 74-3, Ex. C, Dep. of Randon Lee Miller ("Miller-Def. Excerpts") at 86.) Third, Chris Kruidenier, a manager at the restaurant, similarly confirmed that Defendant tried to reassign Plaintiff to a hostess position because of "the danger of the position she was in" and out of concern for Plaintiff's safety and the safety of her fetus. (Doc. 70-4, Dep. of Chris Kruidenier ("Kruidenier–Pl. Excerpts") at 4, 6.) Fourth, Jonathon Manzer, a manager at the restaurant, testified that the restaurant tried to reassign Plaintiff to a hostess position because the server position was "potentially dangerous for somebody . . . that was in [Plaintiff's] condition." (Doc. 70-5, Dep. of Jonathon Manzer ("Manzer–Pl. Excerpts") at 2–3.) Mr. Manzer also testified that Defendant tried to reassign Plaintiff because the server position, which required Plaintiff to carry plates, knives, and forks could "potentially be harmful to her and the child that she was carrying." (Manzer–Pl. Excerpts at 5.) The Court finds that Defendant indisputably had a standard practice of

reassigning pregnant servers to the hostess position. Additionally, the Court finds that Defendant indisputably tried to reassign Plaintiff to a hostess position, in part, out of fear for the safety of her fetus and subsequently fired Plaintiff when she refused to accept this reassignment.

Having concluded that no dispute of material fact remains that Defendant overtly discriminated against Plaintiff based on her pregnancy, the Court next addresses if such disparate treatment is justified under Title VII. *Frank*, 216 F.3d at 854. Defendant argues that reassigning Plaintiff to a hostess position was necessary because non-pregnancy "is a [BFOQ] reasonably necessary to the normal operation of that particular business or enterprise." (Resp. at 8 (quoting 42 U.S.C. § 2000e-2(e)).) To qualify for the BFOQ defense, Defendant must prove that 1) specific job qualifications of a server justifying the discrimination are necessary to the essence of its business, and 2) sex is a legitimate proxy for the qualification because nearly all visibly pregnant servers lack the qualification or it is highly impractical to individually test servers to insure that they have the necessary qualification. *See Boeing Co.*, 843 F.2d at 1214.

Regarding the first prong of the BFOQ test, Defendant asserts that a prerequisite for the sushi server position is the ability to carry heavy plates in close proximity to sharp sushi knives in a crowded area where a server may get bumped or fall. (Resp. at 8.) Defendant cites to specific testimony in the record that could lead a factfinder to agree. (DSOF ¶¶ 5, 22, 29, 35.) Therefore, the Court finds that Defendant has raised a triable issue of fact that ability to work under certain conditions at the restaurant is reasonably necessary to the essence of its business.

However, regarding the second prong, the Court finds that Defendant has not shown any evidence that nearly all visibly pregnant women lack the ability to work in the conditions required by the server position or that it is impracticable to insure employees are qualified through individual testing. In its brief, but not its statement of facts, Defendant cites broad, scientific studies regarding trauma during pregnancy to argue that all pregnant women must be reassigned because it is impracticable to test on a case-by-

- 8 -

1  case basis whether Plaintiff could handle trauma to her stomach. (Resp. at 8.) This
2  argument and the supporting evidence are unpersuasive because Defendant presumes that
3  servers are likely to experience trauma to the stomach that is severe enough to harm a
4  fetus or a pregnant employee. Defendant proffers no evidence to support this
5  presumption, such as expert testimony regarding the risk of fetal injury at the restaurant
6  or evidence of previous injuries to servers. Defendant's argument is solely based on a
7  barebones speculation of danger. Even if Defendant had supported this argument with
8  evidence, Defendant's reasoning is explicitly rejected by the Ninth Circuit Court of
9  Appeals and the United States Supreme Court.

10  Concerns for the safety of an unborn fetus, even if such concerns are well-founded and altruistic, are not sufficient to establish sex as a BFOQ. For example, in *Johnson Controls*, a battery manufacturer barred all women, except those whose infertility was medically documented, from jobs involving actual or potential lead exposure exceeding the Occupational Safety and Health Administration ("OSHA") standard. 499 U.S. at 191–97. The Supreme Court held that the company's fetal-protection policy is sex discrimination forbidden under Title VII and that sex was not a BFOQ in that case. *Id.* at 200, 206. The Court reasoned that "moral and ethical concerns about the welfare of the next generation do not suffice to establish a BFOQ." *Id.* at 206. Instead, the PDA mandates that decisions about the welfare of future children be left to parents, not employers. *Id.* at 206–207.

21  Sex can be a BFOQ in very limited situations. The Supreme Court held that an employer's concerns for the physical safety of its *clientele* may qualify sex as a BFOQ. *See Dothard v. Rawlinson*, 433 U.S. 321, 334–35 (1977) (reasoning that employing women as prison guards—in a maximum-security prison where an estimated 20% of the male prisoners were sex offenders scattered throughout the prison's dormitory facility—could pose a threat to the basic control of the penitentiary and the protection of the inmates and other security personnel). However, courts can only consider the safety of *third parties* in the BFOQ analysis if those third parties are indispensable to the "essence

of the business." *Western Air Lines, Inc. v. Criswell*, 472 U.S. 400, 420–21 (1985); *see also Johnson Controls*, 499 U.S. at 203–204 (rejecting the company's BFOQ defense in regards to a policy that excludes pregnant workers, in part, because fetuses are not customers or third parties whose safety is essential to the company's business).

Additionally, arbitrary stereotypes about the physical capabilities of women generally attributable to the group cannot be used to establish sex as a BFOQ. For example, in *Rosenfeld v. Southern Pacific Co.*, a female employee sued a telephone company for its policy of excluding women from certain physically demanding positions that the company deemed women incapable of performing. 444 F.2d 1219, 1229 (9th Cir. 1971). The court held that the telephone company's policy is not excusable under the BFOQ defense. *Id.* at 1227. The court reasoned that the company's policy was based on "a general assumption regarding the physical capabilities of female employees" and that "the company attempts to raise a commonly accepted characterization of women as the 'weaker sex' to the level of a BFOQ." *Id.* at 1224. Instead, employees can only be excluded upon a showing of individual incapacity. *Id.* at 1225; *see also EEOC v. Spokane Concrete Products, Inc.*, 534 F. Supp. 518, 524 (9th Cir. 1982) (holding that sex was not a BFOQ for a truck driver position because the employer's decision to exclude women relied solely on myths and purely habitual assumptions about the physical differences between men and women).

The Court agrees with Plaintiff that it is undisputed that non-pregnancy in this case is not a BFOQ. First, there is no evidence that Plaintiff's pregnancy created a risk to customers. *See Dothard*, 433 U.S. at 334–35. Second, the only third-party whose safety Defendant is concerned about is Plaintiff's fetus, which is not an indispensable party to the essence of Defendant's business. *See Johnson Controls*, 499 U.S. at 203–204; *Western Air Lines, Inc.*, 472 U.S. at 420–21. Third, Defendant's reason for reassigning Plaintiff—concerns about the safety of her fetus—is explicitly rejected by *Johnson Controls*. 499 U.S. at 206. Fourth, Defendant's statements about the weight of plates, sharp knives, and other conditions in the restaurant that Defendant sees as inappropriate

for a pregnant server are arbitrary stereotypes about the physical capabilities of pregnant women that are insufficient to establish a BFOQ. *See Rosenfeld*, 444 F.2d at 1224. Defendant can only exclude upon a showing of individual incapacity instead of based on habitual assumptions about all pregnant workers. *See id.* at 1225.

Unlike cases involving prisoners and dangers to customers where a BFOQ defense might be colorable, the present situation is exactly the type of case that Title VII guards against. For example, in *EEOC v. Red Baron Steak Houses*, No. C–86–5522 CAL, 1988 WL 168582, at *1, (N.D. Cal. Jun. 3, 1988), a plaintiff became pregnant while employed as a waitress at a restaurant. The restaurant manager reduced the plaintiff's work hours and told her that "it doesn't look right" to have someone pregnant waiting on tables. *Id.* During the EEOC investigation, the restaurant conceded that it had a policy of trying to find other positions for pregnant employees out of fear that they might suffer an injury while performing their waitress duties. *Id.* The court granted the plaintiff's summary judgment motion on the issue of Title VII discrimination. *Id.* at *2. The court reasoned that the defendant's admission that it reduced the plaintiff's hours in the best interests of the mother and child is a *per se* violation of Title VII because there is no evidence that the plaintiff was not fully capable of performing her duties. *Id.*; *see also Schneider v. Jax Shack, Inc.*, 794 F.2d 383, 384–85 (8th Cir. 1986) (holding that a plaintiff bartender established a *prima facie* case of discrimination under Title VII where the employer forbade her from working behind the bar while pregnant because of job hazards such as heavy lifting and walking on wet, slippery floors, that might threaten her pregnancy).

Overall, Plaintiff has indisputably established through direct evidence that Defendant has a workplace policy that discriminates against pregnant women, a protected class under Title VII as modified by the PDA, and the discriminatory policy is not excused by a BFOQ. Accordingly, the Court will grant Plaintiff's Motion for Summary Judgment as to Defendant's liability for sex discrimination in violation of Title VII (Count 1).

### B. Gender Discrimination under the Arizona Civil Rights Act

Plaintiff next moves for summary judgment on Defendant's liability for her claim of gender discrimination in violation of ACRA, A.R.S. § 41-1463(B). (Mot. Summ. J. at 6–17.)

#### 1. Legal Standard

Under ACRA, an employer cannot discharge or discriminate against any individual based on sex. A.R.S. § 41-1463(B). ACRA is generally identical to Title VII, and thus federal Title VII case law is persuasive in interpreting the ACRA. *Bodett v. CoxCom, Inc.*, 366 F.3d 736, 742 (9th Cir. 2004); *see also Vitto v. Cent. Parking Corp.*, 103 F. App'x 202, 203 n.1 (9th Cir. 2004) ("We hold that Vitto's claim under the ACRA fails for the same reasons as his claim fails under Title VII.").

#### 2. Analysis

The Court will grant Plaintiff's Motion for Summary Judgment under ACRA (Count 2) for the same reasons it will grant Plaintiff's Motion under Title VII.

**IT IS THEREFORE ORDERED** granting Plaintiff's Motion for Summary Judgment (Doc. 70) on the issue of Defendant's liability.

**IT IS FURTHER ORDERED** that this matter will proceed for a determination of damages.

Dated this 27th day of March, 2017.

Honorable John J. Tuchi
United States District Judge

- 12 -